**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **BILLY J. FINNEY, # B-88695,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 17-cv-053-SMY |
| ) | |
| **ALFONSO DAVID,** ) | |
| **BRUCE RAUNER,** ) | |
| **DORSEY McGEE,** ) | |
| **BLAKE WOODS,** ) | |
| **JEFFREY DENISON,** ) | |
| **LORA LeCRANE,** ) | |
| **LOUIS SHICKER,** ) | |
| **JOHN BALDWIN,** ) | |
| and **WEXFORD HEALTH SOURCES, INC.,**) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff, currently incarcerated at Shawnee Correctional Center ("Shawnee"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that Defendants were deliberately indifferent to his serious medical condition. The Complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact."

1

*Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000).

An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557.  Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).  Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*.  At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A.

### The Complaint

On March 12, 2016, Plaintiff sought medical attention for a large knot that had formed on the back of his scalp.  He had been experiencing severe headaches, night sweats and chest pains

2

at the time. (Doc. 1-1, p. 6). He described his symptoms to Nurse McGee, who checked his vital signs. However, McGee refused to examine the knot on Plaintiff's scalp. McGee did call in another nurse (Woods) to examine Plaintiff's chest and breathing. As a result, Woods scheduled Plaintiff for a chest x-ray.

On March 15, 2016, Plaintiff again sought treatment for the knot on his scalp, which was growing larger. He was still experiencing severe headaches and had begun to sweat continuously and to turn pale. Woods refused to examine the knot but upon taking Plaintiff's temperature, noticed that it was high enough to warrant keeping Plaintiff in the infirmary. (Doc. 1-1, p. 7).

Plaintiff had the chest x-rays on March 16, 2016. Dr. David told Plaintiff that the x-rays showed a large mass in his right lung. Plaintiff told Dr. David about the excruciating pain he was having from the knot on his head. Dr. David examined the knot, but told Plaintiff it was only fat tissue and that it did not require any medical treatment. (Doc. 1-1, p. 7).

On three occasions between March and May 2016, Plaintiff told Dr. David that he was still constantly having severe headaches and requested treatment for the lump on his scalp. Dr. David became agitated and told Plaintiff that it was only fat tissue and that Plaintiff would have to seek treatment for it after he was paroled. David, McGee and Woods deliberately failed to document in Plaintiff's medical records that he had complained about the lump/knot on his scalp. Only on April 7, 2016 did an unknown nurse record that complaint. (Doc. 1-1, pp. 7-8).

Also between March and the end of May 2016, Plaintiff submitted 5 grievances complaining about the medical staff's failure to treat the lump/knot on his head. (Doc. 1-1, p. 11; Doc. 1-2, pp. 19-24). Shawnee Warden Denison replied to one of these and determined that Plaintiff's complaint did not constitute an emergency. Plaintiff never received a response to his

other grievances. Plaintiff also complained several times to Nursing Director LeCrane about the lack of treatment, to no avail. (Doc. 1-1, p. 12).

Following the x-ray that disclosed the lung mass, Dr. David sought and obtained approval from Wexford Health Sources, Inc. to send Plaintiff out to have a CT scan of his chest. This test was performed on March 18, 2016. Plaintiff was taken to Memorial Hospital of Carbondale on several other occasions between March and June 2016 for a PET scan and other tests. A lung specialist (Dr. Bambra) diagnosed him with pulmonary Blastomycosis Hemoptysis and referred him to the infectious disease clinic.

On June 2, 2016, Plaintiff saw Dr. Bobo, an infectious disease specialist. She examined the knot on Plaintiff's scalp after he told her how long it had been there, that it was growing larger and that he had been regularly coughing up blood. (Doc. 1-1, p. 9). Dr. Bobo immediately admitted Plaintiff to the hospital where he had a CT scan of the head. This test showed that the Blastomycosis infection had spread from Plaintiff's scalp into his skull. He underwent surgery to remove the infection. Due to its advanced stage, Plaintiff needed a metal plate to replace a piece of his skull. Plaintiff now suffers from tremors, numbness in his right arm and leg and has lost most of the vision in his right eye. Plaintiff's surgeon and Dr. Bobo told him that had he not been treated for the head infection, he would have died within months. (Doc. 1-1, p. 10). Plaintiff had an IV port surgically implanted in his chest, and was discharged back to Shawnee on June 11, 2016.

On July 27, 2016, Plaintiff contracted a bloodstream infection and was readmitted to the hospital with a high fever. Plaintiff blames the infection on an unknown nurse at Shawnee who failed to wear gloves when she placed the IV in Plaintiff's chest port. (Doc. 1-1, pp. 10-11).

Plaintiff asserts that Wexford Health Sources, Inc. ("Wexford"), the contracted medical provider for Illinois prisons, maintains a cost-saving policy or practice which has resulted in denials and/or delays in providing necessary medical care to himself and other prisoners. (Doc. 1-1, pp. 21-22). He further claims that Rauner, Shicker and Baldwin, through their monitoring of the contract with Wexford, have identified "long-standing, systemic problems in the delivery of health care to all the penal institutions" in Illinois, but have failed to correct these problems. (Doc. 1-1, pp. 2-3; 21-22). Instead, these Defendants have continued to renew the Wexford contract for many years.

Plaintiff asserts that these facts demonstrate that Rauner, Shicker and Baldwin have been deliberately indifferent to his medical needs. (Doc. 1-1, pp. 2, 23-24). In particular, Wexford employee Dr. David is one of the individuals responsible for reviewing and approving health care policies and practices at Shawnee. Plaintiff informed David of his complaints and grievances about the denial of medical care, but David took no action to remedy the problems. (Doc. 1-1, p. 23).

Plaintiff articulates 2 claims for deliberate indifference to his medical needs – the first against Wexford and the "State Defendants" (Rauner, Shicker and Baldwin); and the second against David, Woods, Denison, McGee and LeCrane. (Doc. 1-1, pp. 25-28). He seeks compensatory damages, declaratory relief and injunctive relief against Wexford and the State Defendants. (Doc. 1-1, pp. 28-29).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Based on the allegations of the Complaint and Plaintiff's characterization of his claims, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise

5

directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** Eighth Amendment claim against Wexford Health Sources, Inc., Rauner, Shicker, and Baldwin, for deliberate indifference to the medical needs of Plaintiff and other similarly situated prisoners, in that they have followed cost-saving policies and practices which delayed the provision of medical care and resulted in inadequate treatment, and which caused Shawnee providers to deny and delay treatment of Plaintiff's scalp infection;
>
> **Count 2:** Eighth Amendment deliberate indifference claim against David, McGee, Woods, Denison, and LeCrane, for denying and delaying treatment of the knot on Plaintiff's scalp until his condition became life-threatening.

Count 1 shall proceed against Wexford only. Count 2 shall proceed against all Defendants named therein.

### Deliberate Indifference to Serious Medical Needs

In order to state a claim for deliberate indifference to a serious medical condition, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. An objectively serious condition includes an ailment that significantly affects an individual's daily activities or which involves chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015). However, the Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care

possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).  Further, a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation.  *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

      Here, the knot or lump on Plaintiff's scalp was accompanied by several serious symptoms including, headaches, pain and sweating, and grew larger over the time Plaintiff sought treatment for it.  This condition was serious enough to require medical attention and satisfies the objective component of an Eighth Amendment claim.  The remaining question is whether the defendants were deliberately indifferent to the risk of harm to Plaintiff from the scalp condition.

### Count 1 – Wexford Health Sources, Inc., and State Defendants

      Wexford is a corporation that employs Defendants David, Woods and McGee and provides medical care at the prison, but it cannot be held liable solely on that basis.  A corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right.  *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004).  *See also Jackson v. Ill. Medi-Car, Inc.,* 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action).

      Giving liberal construction to the Complaint, Plaintiff has alleged that Wexford's cost-cutting policy caused or influenced the Shawnee medical providers (Dr. David and nurses McGee and Woods) to dismiss his complaints about the knot on his scalp and to refuse to treat it.  Therefore, Plaintiff's claim against Wexford in Count 1 cannot be dismissed at this stage and shall receive further review.

However, Plaintiff fails to state a claim against Governor Rauner, IDOC Director Baldwin or IDOC Medical Director Shicker. He alleges that these officials knew about deficiencies in the medical care provided by Wexford statewide, yet they continued to renew the contract with Wexford and failed to require Wexford to remedy problems such as inadequate staffing levels. Even if this is true, the factual allegations in the Complaint fail to make a connection between these systemic problems and Dr. David's (or the other medical providers') refusal to treat Plaintiff's scalp condition. Moreover, there is no suggestion that Rauner, Baldwin or Shicker had any personal knowledge of Plaintiff's medical condition or the risks he faced. Absent such knowledge, these officials cannot be held to be deliberately indifferent to Plaintiff's need for treatment of the condition.

Plaintiff's allegations that other "similarly situated" prisoners have been denied medical care due to the claimed systemic deficiencies in the prison health care system suggests that he wishes to expand this action beyond his own personal claims. However, he offers no factual information to support the claim that other prisoners have been denied care, beyond his conclusory assertion. Therefore, the Court shall consider only Plaintiff's personal claims of deliberate indifference in this action.

Additionally, Plaintiff cannot maintain a claim for money damages against the State of Illinois, or against Rauner, Baldwin or Shicker in their official capacity. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment).

Accordingly, Rauner, Baldwin and Shicker shall be dismissed from this action without prejudice. The deliberate indifference claim in **Count 1** shall proceed only against Wexford Health Sources, Inc.

### Count 2 – Prison Medical Providers and Administrators

According to the Complaint, Plaintiff described his symptoms to both McGee and Woods and asked them to examine and treat the knot on his scalp. Both Defendants refused to examine Plaintiff's scalp, which contributed to the delay in treating his condition. At this stage of the litigation, these allegations are sufficient to state a deliberate indifference claim against McGee and Woods.

Dr. David did examine the knot when he saw Plaintiff on March 16, 2016, but concluded that it was merely fat tissue. Plaintiff returned to Dr. David for examination 2 or 3 more times over the next few months, seeking treatment for the worsening symptoms related to the knot on his scalp. On those occasions, Dr. David apparently refused to examine Plaintiff's scalp again and would not provide any treatment for the condition, further delaying the ultimate diagnosis of a serious and life-threatening infection. This sequence of events also raises a viable deliberate indifference claim which shall receive further review.

Neither of the other Defendants, Nursing Director LeCrane or Warden Denison was directly involved in treating Plaintiff. Administrators such as these individuals may nonetheless be held liable for deliberate indifference to a serious medical need, if "they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008). *See also Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015) (prisoner could proceed with deliberate indifference claim against non-medical prison officials who failed to intervene despite their knowledge of his

9

serious medical condition and inadequate medical care, as explained in his "coherent and highly detailed grievances and other correspondences").

Plaintiff has alleged that he directly complained to LeCrane several times about the doctor's and nurses' refusal to treat the knot on his head and that she responded to one of his grievances on the subject. Additionally, Plaintiff's mother allegedly contacted LeCrane on several occasions to complain about the lack of treatment. Plaintiff also submitted a number of grievances to Denison regarding the medical staff's refusal to treat his scalp condition. Denison replied to only one of them. At this juncture, Plaintiff's allegations support a claim of deliberate indifference against LeCrane and Denison for failing to take action after Plaintiff informed them of the medical providers' refusal to treat him. Therefore, the deliberate indifference claims in **Count 2** shall proceed for further review against David, McGee, Woods, Denison and LeCrane.

### Pending Motion

Plaintiff's motion for recruitment of counsel (Doc. 8) shall be referred to the United States Magistrate Judge for further consideration.

### Disposition

Defendants **RAUNER, SHICKER** and **BALDWIN** are **DISMISSED** from this action without prejudice, for failure to state a claim against them upon which relief may be granted.

The Clerk of Court shall prepare for Defendants **DAVID, McGEE, WOODS, DENISON, LeCRANE** and **WEXFORD HEALTH SOURCES, INC.**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk

within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Reona J. Daly** for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 8).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Daly for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  March 28, 2017**

s/ STACI M. YANDLE
United States District Judge
